NORTHLAND WHEELS ROLLER SKATING CENTER, INC v
DETROIT FREE PRESS, INC

Docket No. 154162. Submitted March 14, 1995, at Detroit. Decided
September 8, 1995, at 9:20 A.M.

Northland Wheels Roller Skating Center, Inc., brought an action
in the Wayne Circuit Court against Knight-Ridder, doing busi-
ness as The Detroit Free Press, and Gannett Co., Inc., and The
Detroit News, doing business as The Detroit News, seeking
damages for alleged libel arising out of the reporting of a fatal
shooting that took place on October 25, 1989. The Free Press
article indicated in its headline and in the body of the article
that two teenagers had been shot and that one had been killed
outside the plaintiff roller rink, although later in the article it
was indicated that the shooting was outside a nearby apart-
ment building. The article further noted that the police attrib-
uted the shooting to an argument that occurred inside the
roller rink, but that the victim had not been in the rink. The
News article indicated that the teenagers had been shot as they
were leaving the skating rink as a result of gang violence,
although the victims were merely bystanders. The article fur-
ther stated that the gunman had fired into a group of teenagers
outside the rink because of an argument that had occurred in
the rink. The defendants argued that the articles were based on
police reports and that they were not subject to damages for
libel by reason of the qualified privilege of § 2911(3) of the
Revised Judicature Act, MCL 600.2911(3); MSA 27A.2911(3), as
amended by 1988 PA 396. The plaintiff alleged that the articles
were not fair and accurate reports of the police department's
news release and that as a result of the defendants' false and
defamatory statements it had lost business, profits, and good
will. The court, Helene N. White, J., granted summary disposi-
tion for the defendants, holding that the articles were fair and
accurate reports of the police news release and reports and,
accordingly, that the articles were not defamatory as a matter

REFERENCES

Am Jur 2d, Libel and Slander § 322.

Defamation: privilege attaching to news report of criminal activities
based on information supplied by public safety officers—modern
status. 47 ALR4th 718.

of law. The plaintiff appealed, and defendant Free Press cross appealed.

The Court of Appeals *held:*

1. The fair reporting privilege of § 2911(3) has provided since its amendment in 1989 that damages shall not be awarded for libel for the publication of a fair and true report of matters of public record, of a public proceeding, of a government notice or report, or of an action of a public body or for the heading of such fair and true report.

2. Section 2911(3), by its express language, evidences the Legislature's intent to extend the fair reporting privilege to fair and true reports of police records. Accordingly, because the articles at issue were based on a police press release and police reports, the privilege is applicable if the articles are fair and true reports of those records.

3. The plaintiff failed to carry its burden of showing the type of material falsity of the articles that is necessary to establish that the articles were not fair and accurate reports within the meaning of the fair reporting privilege. The alleged inaccuracies in the articles are immaterial under the substantial truth doctrine, because the literal truth would produce the same effect in the mind of the reader. Accordingly, the privilege is applicable under these circumstances, and the trial court properly granted summary disposition for the defendants on the basis that the plaintiff's claims were unenforceable as a matter of law.

4. The trial court did not err in granting summary disposition before the close of discovery, because there existed no fair chance that further discovery would result in factual support of the plaintiff's claims.

5. The cross appeal of the Free Press relative to the failure of the trial court to grant its request for sanctions and attorney fees is not properly before the Court of Appeals, because the issue was not raised before the trial court.

Affirmed.

LIBEL AND SLANDER — NEWSPAPERS — QUALIFIED PRIVILEGE — POLICE REPORTS.

The statutory qualified privilege of newspapers with respect to the publication of a fair and true report of matters of public record, of a public proceeding, of a government notice or report, or of the action of a public body has included, since its 1989 amendment, fair and true reports of police records (1988 PA 396, MCL 600.2911[3]; MSA 27A.2911[3]).

*Neal Bush, John F. Royal,* and *Wendell Davis,* for the plaintiff.

*Honigman Miller Schwartz & Cohn* (by *Herschel P. Fink*), for Detroit Free Press, Inc.

*Butzel Long* (by *James E. Stewart* and *Leonard M. Niehoff*), for The Detroit News, Inc.

Before: MARILYN KELLY, P.J., and TAYLOR and MARKEY, JJ.

MARKEY, J. Plaintiff appeals as of right from the trial court's grant pursuant to MCR 2.116(C)(8) of summary disposition for defendants Knight-Ridder, doing business as The Detroit Free Press and Gannett Co., Inc., and The Detroit News, doing business as The Detroit News, on the basis of the statutory fair reporting privilege afforded to the press in § 2911(3) of the Revised Judicature Act, as amended by 1988 PA 396, MCL 600.2911(3); MSA 27A.2911(3). Defendant Detroit Free Press also cross appeals the trial court's denial of sanctions. We affirm.

On October 27, 1989, defendant Free Press published an article about a fatal shooting incident that occurred two days' earlier on Eight Mile Road in Detroit, a short distance from plaintiff's skating rink located at 22311 West Eight Mile Road. According to the article, entitled "Teen shot outside roller rink was caught in others' dispute," one teenager died and another was wounded in the leg as a result of the drive-by shooting that occurred "outside a northwest Detroit roller skating rink," but was subsequently described as "outside the nearby Woodland Arms Apartments." The article stated that police attributed the shooting to an argument that occurred inside plaintiff's roller rink that evening, although the victim did not

enter the rink. The article also noted the following:

> Neighbors near the skating rink said Wednesday nights often mean trouble. "It's become a common thing," said neighbor Gail Reed, 25. Rink owner Herman Davis, 51, said he provides a safe environment inside with metal detectors and security guards. But he said he can't control what goes on when 500 to 700 people leave.

That same day, defendant News also published an article regarding the shooting. The article highlighted three separate drive-by shootings that occurred in Detroit on October 25. Defendant News reported that as the two teenagers were leaving plaintiff's skating rink that night, one teenager was "slain in front of the Northland Skating Rink, 22045 W. Eight Mile" and the other was wounded as a result of gang violence, although the victims were merely bystanders. The story also stated that as a result of an argument that began inside plaintiff's rink, the gunman fired ten to fifteen shots into a crowd of teenagers as they left the rink. Several other defendant television stations also carried the story.[1]

In response, plaintiff filed its libel complaint alleging, inter alia, that defendant Free Press and defendant News published stories that were not fair and accurate reports of the police department's news release, which it alleges merely stated that "[t]he compl[ainants] were walking from a nearby skating rink when the perp[etrators] rode by and fired shots, striking the compl[ainants] as described."[2] As a result of defendants' allegedly

---

[1] The remaining defendants in this case were dismissed and are not a part of this appeal.

[2] The police department news release that we located in the lower

false and defamatory statements, which cast plaintiff in a false light among its business patrons and the community by portraying plaintiff's roller rink as an unsafe establishment, plaintiff alleged that it suffered substantial loss of business, profit, and good will.

Both defendants filed motions for summary disposition[3] pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10), asserting that (1) their respective stories were based upon official police accounts of the shooting and, therefore, were privileged, (2) the stories were not defamatory, and (3) plaintiff failed to allege any specific false statements of fact concerning the shooting. The trial court granted defendants' motions for summary disposition. With respect to defendant News, the trial court found that the article regarding the three slayings "appeared to be supported by the police statements. And the statute [i.e., § 2911(3)] would apply." Moreover, even if the shooting at issue did not occur in front of the rink, the court did not believe that the statement was defamatory because the preliminary complaint record (PCR) reflected that the conflict leading up to the shooting originated at the rink. Because the PCR is a public document and it, along with the police records, supported the statements contained in defendant News' article, the trial court found as a matter of law that the article was not defamatory.

With respect to defendant Free Press, the trial court again determined that although the shooting did not occur in front of plaintiff's business, the

court record stated, in pertinent part, that "[b]oth males were walking from a nearby skating rink when the occupants of a passing car fired shots." The release also noted that the shooting occurred in the 22000 block of West Eight Mile Road.

[3] Defendants prevailed on their second motions for summary disposition; the trial court dismissed their first motions in order to permit plaintiff to file its second amended complaint.

police records supported the fact that the shooting victims were congregating in plaintiff's parking lot as they left the skating rink. Also, the court noted that the complaining witness' statement focused primarily on plaintiff's rink. On the basis of the contents of the police records and the fair reporting privilege contained in § 600.2911(3), the trial court granted summary disposition for both defendant News and defendant Free Press, holding that plaintiff had failed to state a claim upon which relief could be granted.

Plaintiff appeals, asserting that the trial court erred in granting defendants' motions for summary disposition, because the news articles were defamatory, discovery was not permitted, genuine issues of material fact existed regarding falsity, and the court failed to address plaintiff's claim of false-light invasion of privacy. Defendant Free Press cross appeals from the trial court's failure to award to it sanctions based upon plaintiff's frivolous pleadings. We affirm.

When addressing defamation claims implicating First Amendment freedoms, appellate courts must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression and to examine the statements and circumstances under which they were made to determine whether the statements are subject to First Amendment protection. *Garvelink v Detroit News*, 206 Mich App 604, 608-609; 522 NW2d 883 (1994). Moreover, the trial court's grant of summary disposition is reviewed de novo because this Court must review the record to determine whether the moving party is entitled to judgment as a matter of law. *Id.* at 607. MCR 2.116(C)(8) permits a court to grant summary disposition for a defendant where the plaintiff has failed to state a claim upon which relief can be granted, i.e., where

the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. A motion under MCR 2.116(C)(8) therefore tests whether the plaintiff's pleadings allege a prima facie case. *Garvelink, supra* at 607-608.

The elements of a libel cause of action are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Rouch v Enquirer & News of Battle Creek (After Remand),* 440 Mich 238, 251; 487 NW2d 205 (1992) (*Rouch II*); *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc,* 197 Mich App 48, 51; 495 NW2d 392 (1992). In cases involving a private plaintiff, a defendant that is a member of the news media, and a publication regarding an area of public concern, the constitution requires that the plaintiff bear the burden of proving falsity. *Rouch II, supra* at 252; *Royal Palace, supra.*

This case presents an issue of first impression because it requires this Court to determine the scope of the fair reporting privilege contained in MCL 600.2911(3); MSA 27A.2911(3), following its amendment in 1988 PA 396,[4] which now states in pertinent part:

---

[4] The statute was amended by 1988 PA 396, effective January 1, 1989. According to the House Legislative Analysis, HB 4932, June 15, 1988, § 2911(3) was amended in response to the Michigan Supreme Court's decision in *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157; 398 NW2d 245 (1986) (*Rouch I*), which applied an "unduly restrictive" definition to the term "official proceeding." In *Rouch I,* our Supreme Court held that information regarding a man's arrest (where the man was never charged and was later cleared of the crime) supplied to and published by a newspaper was not protected by the statutory privilege applying to reports of public and official proceedings. The House Legislative Analysis also criticized *Rouch I's* treatment of the public interest privilege, i.e., a report of a public matter is not actionable unless the report was false and malicious.

Damages·shall *not* be awarded in *a* libel action for the publication *or broadcast* of a fair and true · report of *matters of public record, a* public and official proceeding, *or of a governmental notice, announcement, written or recorded report or report generally available to the public, or act or action of a public body,* or for *a* heading of the report which is a fair and true headnote of the *report.* This privilege shall not apply to a libel which is contained in *a* matter added by *a* person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding *or governmental notice, announcement, written or recorded report or record generally available to· the public, or act or action of a public body,* which was not a part of the public and official proceeding *or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body.* [Emphasis added to show amended language.]

The first question we must address on appeal is whether the information defendants published in their articles regarding the shooting and its connection to plaintiff's skating rink was cloaked with the fair reporting privilege afforded by § 2911(3) as amended. The existence of a privilege that immunizes a defendant from liability for libel is a question of law that this Court determines de novo. *Koniak v Heritage Newspapers, Inc,* 190 Mich App 516, 520; 476 NW2d 447 (1991) (*Koniak I*).

In *Koniak I,* this Court interpreted the predecessor to amended § 2911(3)[5] in light of our Supreme

[5] Before January 1, 1989, § 2911(3) read as follows, in pertinent part:

Court's decision in *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157; 398 NW2d 245 (1986) (*Rouch I*).[6] This Court found that in order to be privileged under the fair reporting statute, a report must be "fair and true":

> The information obtained and published must substantially represent the matter contained in the court records. *McCracken* [v *Evening News Ass'n,* 3 Mich App 32, 39; 141 NW2d 694 (1966)]. This Court has held that such a standard is met, and a defendant is not liable, *where the "gist" or the "sting" of the article is substantially true, that is, where the inaccuracy does not alter the complexion of the charge and would have no different effect on the reader than that which the literal truth would produce, absent proof that such variance caused the plaintiff damage.* See *Fisher v Detroit Free Press, Inc,* 158 Mich App 409, 414; 404 NW2d 765 (1987). [*Koniak I, supra* at 523. Emphasis added.]

Accord *Koniak v Heritage Newspapers, Inc (On Remand),* 198 Mich App 577, 579-580; 499 NW2d 346 (1993) (*Koniak II*). Under this test, minor differences are deemed immaterial if the literal truth produces the same effect. *Id.* at 580. To determine whether the plaintiff carried the burden

> No damages shall be awarded in any libel action brought against a reporter, editor, publisher, or proprietor of a newspaper for the publication in it of a fair and true report of any public and official proceeding, or for any heading of the report which is a fair and true headnote of the article published.

[6] After *Koniak I,* had been decided, our Supreme Court issued its opinion in *Rouch II, supra,* where it refused to address the applicability or breadth of the statutory privilege contained in § 2911(3). *Id.* at 244, n 3. Subsequently, instead of granting leave to review the *Koniak* decision, our Supreme Court remanded the *Koniak* case back to this Court for reconsideration in light of *Rouch II.* See *Koniak v Heritage Newspapers, Inc (On Remand),* 198 Mich App 577; 499 NW2d 346 (1993) (*Koniak II*). This Court's opinion in *Koniak II* reversed the original decision in *Koniak I* but did not, however, discuss the amendment of § 2911(3) or the panel's earlier application of § 2911(3) as it read before 1989.

of showing material falsity under the substantial truth doctrine, this Court must independently review the entire record. *Id., citing Rouch II, supra* at 258-260.

Upon reviewing the record, including police reports regarding the October 25 shooting, we believe that save for references in defendant Free Press' article to neighborhood trouble created by plaintiff's rink, defendants' newspaper articles represented "fair and true" reports of matters contained in the Detroit Police Department's written reports or records that are generally available to the public pursuant to the Freedom of Information Act. MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* This conclusion is undeniable in light of the Legislature's explicit amendment of § 2911(3) to include within the fair reporting privilege not only the publication of public and official proceedings but also the broadcast of matters of public record, of a governmental notice, announcement, written or recorded report or record generally available to the public, or act of a public body. We are bound to ascertain and give effect to the Legislature's intent, and the Legislature is presumed to have intended the meaning it plainly expressed. *Vugterveen Systems, Inc v Olde Millpond Corp,* 210 Mich App 34; 533 NW2d 320 (1995). If the meaning of the statutory language is clear, judicial construction is neither necessary nor permitted. *Id.*

Indeed, under the plain language of § 2911(3), the privilege encompasses newspaper articles based upon police reports of criminal incidents. Also, the legislative analysis of the bill amending § 2911(3) evidences the Legislature's intent to broaden our Supreme Court's restrictive interpretation of the preamended § 2911(3) in *Rouch I, supra* at 171-172, where the Court held that the statute's fair reporting privilege was inapplicable

to governmental action, arrest records, or public records. House Legislative Analysis, HB 4932, June 15, 1988. See also *Koniak I, supra* at 521-522. Critically, nothing in § 2911(3) limits the fair reporting privilege only to the police department's press release regarding the shooting; while the release would constitute a "governmental announcement generally available to the public," we believe the statutory privilege was drafted to incorporate much more than press releases.

In light of the statute's express language and the Legislature's intent in expanding the reach of the fair reporting privilege, we believe that § 2911(3) in its present form does extend the fair reporting privilege to *fair and true reports* of police records. Accordingly, the next issue we must resolve is whether defendants' newspaper articles constituted fair and true reports of police records and, therefore, were privileged under § 2911(3).

After reviewing the police reports, witness statements, and police incident report circulated to the news media, we believe that plaintiff has failed to establish material falsity under the substantial truth doctrine. *Rouch II, supra* at 258-259; *Koniak II, supra* at 579-580. Neither the "sting" nor the "gist" of defendants' articles would have a different effect on the reader's mind than the literal truth. Although defendants published articles that stated that as the result of an argument that began inside plaintiff's skating rink, a teenager was slain in front of plaintiff's skating rink as patrons were leaving the rink, we do not believe that a reader would be affected by this saddening news any differently had the article specified that (1) the victims were shot outside the Woodland Arms Apartment, which is located at 22045 West Eight Mile, (2) when the shooting occurred, the victims and other teens were leaving the parking

lot in front of plaintiff's skating rink, located two hundred yards away at 22311 West Eight Mile, and (3) as plaintiff alleges, nothing occurred inside the rink that contributed to the shooting. These alleged inaccuracies are immaterial under the substantial truth doctrine because the literal truth produces the same effect in the mind of the reader. The literal truth is that another teenager senselessly was murdered in a Detroit parking lot during a drive-by shooting. Exactly where, when, or why is irrelevant to the "gist" of the story.

We are aware that defendants' articles may imply that plaintiff's skating rink is unsafe because a shooting occurred outside the rink and neighbors mentioned that problems do occur when young people congregate in the area. Even though this statement in defendant Free Press' article is not afforded protection under the fair reporting statute because it was not gleaned from police records about the shooting, this statement is insufficient to establish that plaintiff's business was defamed. See *Heritage Optical Center, Inc v Levine,* 137 Mich App 793, 797-798; 359 NW2d 210 (1984).

A corporation may successfully assert a cause of action for defamation if it operates for profit "and the matter *tends to prejudice it in the conduct of its business or to deter others from dealing with it . . . ." Id.* at 797, citing 3 Restatement Torts, 2d, § 561, p 159 (emphasis added in *Heritage Optical*). Also, "language which casts an aspersion upon its honesty, credit, efficiency or other business character may be actionable." *Heritage Optical, supra* at 798, citing Prosser, Torts (4th ed), § 111, p 745. "[W]here a libel contains an imputation upon a corporation in respect to its business, *its ability to do business,* and its methods of doing business, the same becomes libelous per se." *Heritage Optical,*

*supra,* citing *Maytag Co v Meadows Mfg Co,* 45 F2d 299, 302 (CA 7, 1930) (emphasis added in *Heritage Optical*).

With respect to defendant Free Press' article, the trial court ruled that the article could not be reasonably understood as implying a defamatory falsehood. We agree with the trial court that unless the article implied that the management of a business participated in, encouraged, or negligently permitted the shooting to occur on its outdoor premises, it is not defamatory to say that the victims were shot in or near plaintiff's parking lot. Cf. *Heritage Optical, supra* at 798.

Accordingly, plaintiff failed to establish sufficient evidence to show that defendants violated the substantial truth doctrine by publishing materially false information regarding the October 25, 1989, shooting. Thus, defendants' articles represent two fair and true reports of Detroit Police Department records regarding the shooting, and defendants are afforded the protections granted to publishers under the fair reporting privilege contained in § 2911(3) as amended. Moreover, any information contained in the articles that the editors added was not defamatory to plaintiff, so summary disposition with respect to those comments was also proper. We therefore affirm the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8), because plaintiff's defamation claims were so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Garvelink, supra; ETT Ambulance Service Corp v Rockford Ambulance, Inc,* 204 Mich App 392, 395-396; 516 NW2d 498 (1994).

We also find that the trial court did not err in granting defendants' summary disposition motions before the close of discovery because summary

disposition is appropriate if no fair chance exists that further discovery will result in factual support for the nonmoving party. *Mackey v Dep't of Corrections,* 205 Mich App 330, 333; 517 NW2d 303 (1994). Plaintiff also failed to raise this issue below, so it is not properly preserved for appellate consideration. See *Jishi v General Motors Corp (On Remand),* 207 Mich App 429, 436; 526 NW2d 24 (1994).

Likewise, plaintiff failed to raise, and the trial court never addressed, the issues whether summary disposition was appropriate because (1) material issues of fact existed regarding the falsity of defendants' statements in the news articles, and (2) a corporation could not plead false-light defamation. Rather, the trial court granted defendants' motions for summary disposition because the statements were not defamatory. These issues, therefore, were not properly preserved for appeal, *Jishi, supra,* and remand is unnecessary because summary disposition was appropriately granted on other grounds.

Finally, defendant Free Press asserts on cross appeal that the trial court erred in failing to address its request for sanctions and attorney fees. Because this issue was not raised at the hearing of defendants' motions for summary disposition and the trial court did not address this issue, this Court will not consider the issue on appeal. *Jishi, supra.*

Affirmed.