A. Anne BOWERS, Jr., Plaintiff,

v.

Jack REUTTER, Jeffrey Hoskins, individually; Schoolcraft College, Richard McDowell, Edwynna R. Dansby, Conway A. Jeffress, James Walling, Barbara A. Geil, Betty Gilbert, individually and as agents/representatives of Schoolcraft College, jointly and severally, Defendants.

Civil No. 95–73618.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 13, 1997.

Daniel J. Hoekenga, Hoekenga and Farrell, P.C., Southfield, MI, for Plaintiff.

Colleen A. O'Brien, Cummings, McClorey, Davis & Acho, Farmington Hills, MI, for Schoolcraft Defendants.

Jack Reutter, Northville, MI, pro se.

### MEMORANDUM OPINION AND ORDER

GILMORE, District Judge.

Defendants Schoolcraft College, Richard McDowell, Conway Jeffress, James Walling, Barbara Geil and Betty Gilbert filed a joint motion for summary judgment. Plaintiff Anne Bower's motion to strike argument B of defendants' reply brief is also before the Court. For the following reasons, the Court **GRANTS** defendants' motion for summary judgment on counts 3 through 8 and **DENIES** plaintiff's motion to strike. The two remaining state claims alleged against defendant Jack Reutter are hereby **REMANDED** to Wayne County Circuit Court.

### I. Background

Plaintiff Anne Bowers is an adjunct assistant professor in communications arts at Schoolcraft College. In the winter term of 1993, plaintiff was teaching Communications Arts 103 in which defendant Jack Reutter and named defendant Jeffrey Hoskins [1] were

---

1. Jeffrey Hoskins was never served. Therefore, he will not be referred to as a defendant.

enrolled. During a class period for Communications 103 on February 20, 1993, plaintiff and defendant Reutter got into a dispute about a policy plaintiff implemented that day. The policy concerned plaintiff's instruction that "due to the number of speeches that had to be completed that day class would be running over time and that if any students needed to leave by noon, those students should give their speeches first." *See Plaintiff's Amended Complaint,* ¶ 13.

At noon, defendant Reutter and Hoskins began to leave the room. Plaintiff advised them that if they left without giving their speeches, they would receive a failing grade for the assignment. Defendant Reutter objected. Thereafter, plaintiff and defendant Reutter went into the hallway to discuss Reutter's complaint. Plaintiff alleges that defendant Reutter then verbally and physically assaulted her. Plaintiff returned to the classroom, followed by defendant Reutter, who purportedly continued arguing with plaintiff.

Immediately following the altercation, plaintiff and defendant Reutter went to plaintiff's office, accompanied by other students, and set up an appointment to meet jointly with defendant Dr. Edwynna Dansby, Dean of College Centers. Plaintiff also discussed the incident with the Assistant Dean of College Centers, defendant James Walling.

The following Monday, February 22, 1993, defendant Reutter and Jeffrey Hoskins, another student involved in the alleged assault of plaintiff, made allegations against plaintiff to defendant Conway Jeffress, Vice President for Instruction. The substance of the allegations was that plaintiff had made derogatory remarks about other faculty members, including calling them names; that plaintiff had given another student an inappropriate assignment on an offensive topic; that plaintiff had periodically called defendant Reutter "Mr. Duh"; and that plaintiff was anti-male and periodically made comments about male anatomy.

Defendant Jeffress prepared a memorandum containing these allegations and then faxed it to Dean Dansby and Assistant Dean Walling. On Tuesday, February 23, 1993, Assistant Dean Walling, considering this to be a formal complaint, informed plaintiff that she had 10 days to file a response to the allegations made by defendant Reutter and Hoskins and that defendant Reutter had been transferred out of her class. Plaintiff prepared two documents in response. Various materials regarding the incident and the allegations were included in plaintiff's personnel file.

On March 16, 1993, plaintiff's union representative, plaintiff, Assistant Dean Walling and defendant Betty Gilbert, Director of Labor Relations, met following reports that plaintiff had discussed with her class the allegations made by defendant Reutter and Hoskins. In that conference, plaintiff agreed not to discuss those allegations again with her class, but explained that she had merely responded to students' inquiries regarding what Schoolcraft was doing related to defendant Reutter and Hoskins.

Subsequently, Hoskins wrote a letter to defendant Dr. Barbara Geil, Vice President of Student Services, wherein he accused plaintiff of sexual harassment and discrimination. He also stated that the incident had affected him so much that he had to withdraw from his classes and would lose his tuition. As a result, Dean Dansby alerted plaintiff of Hoskins' letter and its contents by letter dated May 10, 1993. The letter, which is at the center of this dispute, reads as follows:

A complaint alleging sexual discrimination and harassment in Coma 103, section 216047, was sent to Barbara Geil ... by Jeffrey A. Hoskins. His complaint was reviewed. Although the nature of the comments are [sic] inappropriate, they may not constitute sexual harassment. The student did, however, receive a tuition refund for Coma 103. This was a better way to handle the situation than bring this issue through the process of public scrutiny.

The enclosed materials will be placed in your personnel file. You are entitled to make your comments to be included with this material in your file.

*See Defendants' Exhibit A.*

Plaintiff then filed a grievance challenging the inclusion of the letter in her personnel

file; the grievance was resolved by an agreement whereby the May 10, 1993 Dansby letter was to be removed from plaintiff's personnel file and replaced with a letter deleting the phrase "the nature of the comments are inappropriate." Plaintiff claims that the agreement further provided that the original letter would be destroyed. Defendant disputes this assertion and states that the original letter was placed in a separate grievance file.

On July 23, 1993, plaintiff filed a criminal complaint against defendant Reutter for assault and battery. Reutter's criminal defense attorney served a subpoena on Schoolcraft College requesting it to produce memoranda and any related complaints and letters relating to plaintiff and the altercation in the communications class. Schoolcraft College complied with the subpoena. Schoolcraft College was served with a second subpoena requesting Assistant Dean Walling's incident report and a copy of the May 10, 1993 letter from Dean Dansby to plaintiff. Schoolcraft College again complied with the subpoena. However, Schoolcraft College did not notify plaintiff of these disclosures.

Plaintiff filed the instant suit one year later, on August 9, 1994, in Wayne County Circuit Court. On August 4, 1995, plaintiff filed her First Amended Complaint, adding several federal claims. Defendants then removed the action to this Court.

Plaintiff asserts the following claims: (1) assault and battery (against defendant Reutter only); (2) tortious interference with existing and prospective economic relations (against defendant Reutter only);[2] (3) violation of the Bullard–Plawecki Employee Right to Know Act; (4) gross negligence; (5) defamation; (6) constitutional violations of plaintiff's rights of free speech, privacy and liberty interests; (7) violations of Michigan's constitution; and (8) breach of implied contract. The Schoolcraft defendants then filed this motion for summary judgment. Plaintiff also filed a motion to strike argument B in defendants' reply brief. The Court held a

hearing on the motions on Thursday, December 5, 1996, and took the matter under advisement.

## II. Preliminary Findings

Resolution of two key issues simplifies the analysis of most of the claims: the validity of the subpoenas issued in the criminal action and the contents of the grievance settlement.

■ First, the Court finds that the subpoenas issued in the criminal action against Jack Reutter and served on Schoolcraft College were valid. Chapter 6 of the Michigan Court Rules, which deals with criminal procedure, states that:

> [t]he provisions of the Rules of Civil Procedure apply to cases governed by ... [C]hapter [6], except (1) as otherwise provided by rule or statute, (2) when it clearly appears that they apply to civil actions only, or (3) when a statute or court rule provides a like or different procedure.

MCR 6.001(D).

Michigan Court Rule 2.001 provides that Chapter 2's rules govern "procedure in all civil proceedings in all courts...." However, this Rule does not imply that it applies exclusively to civil proceedings. Rather, the issuance of subpoenas, governed by MCR 2.506, applies to subpoenas issued in criminal cases because none of MCR 6.001's exceptions applies. Accordingly, the subpoenas issued in the criminal matter involving Jack Reutter were valid.

■ Second, the Court finds that the grievance settlement did not require the destruction of any or all copies of the original May 10 letter by Dean Dansby. This conclusion is supported by the memoranda exchanged among the parties.

Union Representative Stewart Bloom wrote a memorandum on June 28, 1993, to Dean Dansby wherein he indicated that the Union, on plaintiff's behalf, was prepared to accept a revised letter deleting the statement, "the nature of the comments are inap-

---

2. Defendant Jack Reutter, pro se, did not join in this motion nor did he file his own motion. Therefore, counts 1 and 2 are not affected by the Schoolcraft defendants' motion for summary judgment.

propriate" from the original May 10, 1993 letter. *See Defendants' Reply, Exhibit 2.*

Dean Dansby responded on July 8, 1993, and accepted Bloom's June 28 proposal. Dean Dansby indicated that the original letter would be replaced and a newly edited letter would be placed in plaintiff's personnel file. *See Defendants' Reply, Exhibit 2.*

On July 14, 1993, Bloom indicated that Dansby's response on July 8 was "acceptable to the forum." This memorandum stated:

> Upon the placement in the file of the revised letter along with the removal of the original document of May 10, the grievance will be resolved.

*See Defendants' Reply, Exhibit 3.*

Thus, based on the written memoranda exchanged, there is no indication that the original letter was to be destroyed as part of the grievance settlement. Deposition testimony also supports this finding. Defendant Gilbert testified that the original May 10 letter which was in plaintiff's personnel file was destroyed. *See Plaintiff's Exhibit 16, Deposition of Betty Gilbert, at pp. 35, 70.* Defendant Jeffress testified that the letter in the personnel file was to be destroyed. *See Plaintiff's Exhibit 17, Deposition of Conway Jeffress, at p. 110.* Stewart Bloom testified that he assumed it would be destroyed. *See Plaintiff's Exhibit 18, Deposition of Stewart Bloom, at p. 11.* However, no one testified that destruction of the original May 10 letter was part of the formal grievance settlement. Although the copy in plaintiff's personnel file was destroyed, nowhere is it suggested in any memoranda or deposition testimony that all copies of it must be destroyed or that a copy for the grievance file was prohibited by the settlement. Based on the foregoing, the Court concludes that the grievance settlement, as evidenced by the aforementioned memoranda exchanged, did not require the destruction of any or all copies of the original May 10 letter written by Dean Dansby.

These two preliminary findings having been made, the disposition of the counts 3 through 8 is simplified.

### III. Standard of Review

It is well-established that when considering a summary judgment motion, the moving party must show that "... there is no genuine issue as to any material fact ..." Fed. R.Civ.P. 56(c). Moreover, the court must consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-moving party's favor. *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233 (6th Cir. 1992).

Applying this standard to the present case, the Court concludes that, viewing the facts in the light most favorable to plaintiff, there is no genuine issue as to any material fact, and defendants' motion must be granted. An analysis of each claim involving the School-craft defendants follows. The remaining state claims as against defendant Reutter are therefore remanded to Wayne County Circuit Court.

### IV. Violation of the Bullard– Plawecki Act

■ The Bullard–Plawecki Employee Right to Know Act (hereinafter "the Bullard–Plawecki Act"), M.C.L.A. § 423.501, provides, in relevant part:

> (1) An employer or former employer shall not divulge a disciplinary report, letter of reprimand, or other disciplinary action to a third party, to a party who is not part of the employer's organization, or to a party who is not part of a labor organization representing the employee, without written notice as provided in this section.
>
> (3) This section shall not apply if any of the following occur:
>
> > (b) the disclosure is ordered in a legal action or arbitration to a party in that legal action or arbitration.

M.C.L.A. § 423.506.

It is undisputed that the defendants did not notify plaintiff when they provided documents pursuant to two subpoenas issued by Jack Reutter's criminal defense attorney in the criminal matter. However, defendants' disclosure is excepted by M.C.L.A. § 423.506(3)(b) because the disclosure was ordered in a legal action. There is no rele-

vant law in Michigan, in the federal district courts or in the Sixth Circuit which discusses the issue of whether a subpoena is an order for purposes of the Bullard–Plawecki Act. However, relying on the language of the statute and looking at it as a whole, it is clear that the State Legislature did not intend to limit disclosure under M.C.L.A. § 423.506 to orders of a court or other direct judicial involvement. If the Legislature had so intended, it would not have allowed disclosure of documents in a personnel record ordered in an arbitration to a party in that arbitration because there is no judicial involvement in such a situation.

Additionally, the comments following MCR 2.506, which governs the issuance of subpoenas, acknowledge the distinction between court orders and subpoenas duces tecum and subpoenas ad testificandum, but also points out that the most significant distinction is that court orders do not have a territorial limit. MCR 2.506, Commentary, note 2, pp. 101–02. Michigan Court Rule 2.506 itself provides that "[a] subpoena signed by an attorney of record in the action ... has the force and effect of an order signed by the judge of that court."

Accordingly, the subpoenas, issued under MCR 2.506, are considered orders for purposes of the exceptions to the written notice requirement of the Bullard–Plawecki Act under M.C.L.A. § 423.506(3)(b). Defendants did not violate the Act, genuine issues of material fact do not remain, and the motion for summary judgment must be granted on this count.

### V. Gross Negligence

The Schoolcraft defendants are covered by governmental immunity from tort liability pursuant to M.C.L.A. § 691.1407. That statute provides:

[E]ach officer or employee of a governmental agency, ... shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while engaged in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, gross negligence means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

M.C.L.A. § 691.1407(2).

■ The first two conditions clearly are met and are not in dispute. With respect to the third condition, the defendants did not act grossly negligent such that their conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to plaintiff.

First, upon plaintiff's request, defendant Reutter was summarily removed from her class. This was effective on February 24, 1993, prior to the next meeting of the class. Second, after hearing the allegations made against plaintiff by defendant Reutter and Hoskins, Assistant Dean Walling discredited their allegations by explaining to plaintiff that her statements did not constitute sexual harassment or discrimination, as alleged. In his Incident Report, Assistant Dean Walling stated that his treatment of the allegations as a formal complaint was "more or less a formality, since the situation was basically ... closed and the issues a mute [sic] point since ... [Schoolcraft] had already made arrangements to move [Reutter] to another class." *See Incident Report, Defendants' Reply, Exhibit 5, p. 5.*

The Incident Report and the May 10 letter indicate that defendants did not believe an extensive investigation was warranted because the allegations were not afforded much credibility on their face. Thus, not pursuing further investigation did not amount to gross negligence.

Moreover, offering Hoskins a tuition refund following his allegations was likewise not grossly negligent. Neither was Dean Dansby grossly negligent when she stated in the May 10 letter that plaintiff's comments were "inappropriate." When considering the letter as a whole, Dansby's conclusion was merely an uninformed opinion. Additionally, the letter invited plaintiff to respond to the allegations and also reported that the allegations, even if true, did not amount to harassment or discrimination. Therefore, plaintiff's contention that the letter was written with gross negligence is spurious at best.

Finally, with respect to the allegations that disclosure of documents pursuant to subpoenas was grossly negligent because the grievance settlement required that the document be destroyed, the Court has concluded that the subpoenas were valid and that the grievance settlement did not provide that the May 10, 1993 letter be destroyed. Accordingly, there is no genuine issue of material, and summary judgment must be granted on this count.

### VI. Defamation

■ In Michigan, the elements of a defamation claim are "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication." *Northland Wheels Roller Skating Center, Inc. v. Detroit Free Press, Inc.*, 213 Mich.App. 317, 539 N.W.2d 774 (1995).

M.C.L.A. § 600.5805(7) governs the statute of limitations in defamation claims and provides that the period of limitation is one year. Accordingly, all defamation claims which occurred prior to August 9, 1993 within Schoolcraft College, are time-barred.

■ With respect to plaintiff's claim that defendants' production of the documents at issue pursuant to subpoenas constituted defamatory publications, such production is qualifiedly privileged pursuant to *Baggs v. Eagle–Picher Industries, Inc.*, 750 F.Supp.

264 (W.D.Mich.1990), *aff'd*, 957 F.2d 268 (6th Cir.Mich.), *cert. denied*, 506 U.S. 975, 113 S.Ct. 466, 121 L.Ed.2d 374 (1992). In *Baggs*, the Western District stated that, under Michigan law,

a publication is ... qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him [or her] the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes a right in the interest of society that he should tell third persons certain facts, which he in good faith proceeds to do.

*Baggs*, 750 F.Supp. at 270.

The *Baggs* court went on to hold that "if the court determines that defendant had a qualified privilege to make the statements, it must then determine whether a dispute as to a material issue of fact exists with regard to whether defendant made the statement with actual malice and whether the statements were false." *Id.* at 280–81. To prove actual malice, plaintiff must show that defendants made the statements with knowledge that they were false or with a reckless disregard as to whether they were false or not. *Id.*

■ In the present case, defendants operated under a duty to disclose the documents pursuant to valid subpoenas. Therefore, defendants had a qualified privilege "to make the statements." Moreover, no material issue of fact exists with regard to whether defendants made the statements with actual malice and whether the statements were false because defendants did not make any statements with knowledge that they were false or with a reckless disregard as to their falsity.

The statement at issue is Dean Dansby's in her original May 10, 1993 letter wherein she commented: "Although the nature of the comments are [sic] inappropriate, they may not constitute sexual discrimination or harassment." Plaintiff argues that Dansby assumes she made the statements, that the allegations referred to were false and that opining on their inappropriateness constitutes defamation. Each time this document

was produced or sent, plaintiff argues that another defamatory publication occurred. However, plaintiff jumps to the conclusion that Dean Dansby assumed she made the statements. What Dean Dansby says, in context, is that a complaint containing allegations of sexual harassment and discrimination was received and reviewed. She then stated that the *nature of the comments* is inappropriate, but she does not charge that plaintiff made the statements. In fact, the allegedly defamatory statements were made by defendant Reutter and Hoskins, not by Dean Dansby. Dean Dansby's comment that the "nature of the comments are inappropriate" does not constitute a false statement, and therefore, actual malice cannot be shown.

Because plaintiff's claims are either time-barred or constitute qualifiedly privileged statements not made with actual malice, defendants' motion for summary judgment on this count must be granted.

### VII. Constitutional Violations

Plaintiff asserts violations of her rights to privacy and to due process under the United States Constitution and the Michigan Constitution based on her argument that the subpoenas were invalid and that the grievance settlement required the original May 10 letter to be destroyed. Given this Court's preliminary holdings, plaintiff's right to privacy and due process claims must fail. Plaintiff's third constitutional claim, a violation of her free speech rights, must also fail, but for different reasons.

In determining whether plaintiff's free speech rights have been violated in a public educational setting, the court must apply a balancing test. The Sixth Circuit's test is found in *Hildebrand v. Board of Trustees of Michigan State University,* 662 F.2d 439 (6th Cir.1981), *cert denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982):

A court must balance the interests of the [teacher] as a citizen in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.* at 442, quoting *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

The Schoolcraft defendants' request that plaintiff not discuss the allegations made by defendant Reutter and Hoskins came after plaintiff had already done so on one occasion. Arguably, the substance of that discussion was not a matter of public concern at all, but rather a matter of private concern related to plaintiff's employment with Schoolcraft. Even if the discussion were to be considered a matter of public concern, balancing plaintiff's interests and defendants' interest "in promoting the efficiency of the public services it performs," the balance tips in favor of defendants. Defendants were attempting to resolve the competing allegations of Reutter, Hoskins and plaintiff. Defendants wished to handle the matter internally, but plaintiff's discussion of what she knew about Schoolcraft's actions at that point could have impeded defendants' attempts to address all parties' concerns by involving more people in resolution of the incident. Moreover, after plaintiff was asked not to discuss the matter further, she cut off the discussion and requested that the meeting be adjourned until she could appear with a union representative. At that point, the grievance settlement was negotiated and other actions with respect to Reutter and Hoskins occurred.

In short, plaintiff's free speech rights were not infringed by defendants' request that she refrain from discussing the incident and the allegations with her class. Application of the *Hildebrand* balancing test to the facts of this case requires that plaintiff's interests be outweighed by defendants' and that defendants' motion for summary judgment on this count must be granted.

### VII. Breach of Implied Contract

In *Hercules, Inc. v. United States,* the Supreme Court held that "[a]n agreement implied in fact is 'founded upon a meeting of the minds, which although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.'" *Hercules, Inc. v. United*

*States,* —— U.S. ——, ——, 116 S.Ct. 981, 986, 134 L.Ed.2d 47 (1996).

The Michigan Supreme Court similarly held that "[a] contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract." *Erickson v. Goodell Oil Co., Inc.,* 384 Mich. 207, 211–212, 180 N.W.2d 798 (1970).

 It cannot reasonably be inferred that a general student catalog mailed out to any prospective or enrolled student who so requests constitutes an implied contract between Schoolcraft College and plaintiff, a part-time instructor working under a collective bargaining agreement and belonging to a union.

If that implausible inference were not enough on which to base summary judgment, the catalog's own statements are. First, the catalog provides that the policies and regulations of Schoolcraft are subject to change at any time. Such indefiniteness of terms does not support an assertion of the "meeting of the minds." Moreover, the catalog unequivocally states that it in no way should be construed as a contract between the recipient and Schoolcraft. Given that the intended recipient is an enrolled or prospective student, plaintiff's illogical leap that the catalog governs contractual relations between professors and Schoolcraft is completely meritless.

No mutual intent to contract can be inferred; neither can a meeting of the minds be inferred. Accordingly, no fact questions remain, and defendants' motion for summary judgment on this count must be granted.

### VIII.

Based on the two threshold findings and the subsequent analysis, this Court **GRANTS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on Counts 3 through 8. The remaining state claims alleged against defendant Jack Reutter, counts 1 and 2, are **REMANDED** to Wayne County Circuit Court.

Finally, the Court **DENIES PLAINTIFF'S MOTION TO STRIKE ARGU-**MENT B OF DEFENDANTS' REPLY BRIEF.

**IT IS SO ORDERED.**