IRELAND v EDWARDS

Docket No. 194726. Submitted April 14, 1998, at Detroit. Decided July 10, 1998, at 9:10 A.M.

Jennifer Ireland brought an action in the Wayne Circuit Court against Sharon-Lee Edwards, alleging defamation, false light invasion of privacy, and intentional infliction of emotional distress as a result of statements the defendant made to the media during the course of a child custody dispute between the plaintiff and a third party who was represented by the defendant, an attorney, in the custody dispute. The court, Michael J. Callahan, J., granted the defendant's motion for summary disposition and dismissed the action. The plaintiff appealed.

The Court of Appeals *held*:

1. To establish her defamation claim with regard to statements not protected by the First Amendment, the plaintiff must show that the defendant made a false and defamatory statement concerning the plaintiff, an unprivileged publication to a third party, fault amounting at least to negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. In addition, the plaintiff, a limited-purpose public figure because of the media attention the custody dispute generated, must establish by clear and convincing evidence that the defendant made the statements with actual malice. Actual malice exists where the publication was made with knowledge of the falsity of the statements or with reckless disregard of their truth or falsity.

2. A statement of opinion must be provable as false to be actionable. Therefore, statements regarding an objectively verifiable event could be actionable while subjective assertions would not be actionable. The defendant's statements regarding the plaintiff's fitness as a mother are subjective, not provable as false, and not actionable.

3. Certain statements, although factual on their face and provable as false, that cannot be interpreted by a reasonable listener or reader as stating actual facts about a plaintiff are not defamatory. Here, many of the defendant's statements, read or heard in context, could not reasonably be understood as stating actual facts about

the plaintiff. The defendant's statements regarding the amount of time the plaintiff spent with the child are not actionable for that reason.

4. The statement that the child suffered a fractured arm because of the plaintiff's negligence is not actionable because there is no dispute that the child suffered a fractured arm or wrist while under the plaintiff's supervision and the question whether the injury was the result of the plaintiff's negligence can only be answered subjectively and is not provable as false.

5. There is a genuine issue of material fact regarding whether the remaining statements are false. However, because the plaintiff did not show any evidence of actual malice, summary disposition with regard to those statements was appropriate. Summary disposition was properly granted with regard to the plaintiff's defamation claim.

6. The First Amendment limitations on actionability in defamation claims, that the statements must be provable as false, that they must be understandable as stating actual facts about the plaintiff, and, in the case of a public-figure plaintiff, that the plaintiff must prove actual malice by clear and convincing evidence, are not exclusive to defamation claims and apply to all of the plaintiff's claims in this case. Because all the claims are based on the same statements and the plaintiff cannot overcome the First Amendment limitations regarding the statements, summary disposition was properly granted with regard to all the claims.

Affirmed.

1. LIBEL AND SLANDER — APPEAL — CONSTITUTIONAL LAW.

Appellate courts addressing defamation claims implicating First Amendment freedoms must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression and to examine the statements and circumstances under which they were made to determine whether the statements are subject to First Amendment protection (US Const, Am I).

2. LIBEL AND SLANDER — ACTIONS.

A communication is defamatory if, considering all the circumstances, it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with the individual; not all defamatory statements are actionable; the First Amendment protects a communication that cannot be reasonably interpreted as stating actual facts about an individual (US Const, Am I).

3. LIBEL AND SLANDER — ACTIONS — LIMITED-PURPOSE PUBLIC FIGURES.

A plaintiff may establish a defamation claim regarding statements by a defendant that are not protected by the First Amendment by showing a false and defamatory statement concerning the plaintiff, an unprivileged publication to a third party, fault amounting at least to negligence on the part of the publisher, and either action-ability of the statement irrespective of special harm or the exis-tence of special harm caused by the publication; in addition, where the plaintiff is a limited-purpose public figure, the plaintiff must establish by clear and convincing evidence that the defendant made the statement with actual malice; actual malice exists where the publication was made with knowledge of the falsity of the state-ment or with reckless disregard of its truth or falsity (US Const, Am I).

4. LIBEL AND SLANDER — STATEMENTS OF OPINION.

A statement of opinion must be provable as false in order for the statement to support a defamation action; an opinion regarding an objectively verifiable event may be proved to be false while an opinion containing a subjective assertion is not provable as false.

5. LIBEL AND SLANDER — ACTIONS.

Statements, although factual on their face and provable as false, that cannot be interpreted by a reasonable listener or reader as stating actual facts about a plaintiff in a defamation action and statements that, when read in context, are not capable of defamatory interpre-tation do not support an action for defamation.

6. LIBEL AND SLANDER — ACTIONS.

A court in an action for defamation may decide as a matter of law whether a statement is actually capable of defamatory meaning and may grant summary disposition where no such meaning is possible.

7. LIBEL AND SLANDER — MALICE — QUESTIONS OF LAW.

Whether the evidence in a defamation case is sufficient to support a finding of actual malice is a question of law.

8. LIBEL AND SLANDER — ACTIONS — FIRST AMENDMENT LIMITATIONS ON ACTIONABILITY.

The First Amendment limitations on the actionability of statements alleged to be defamatory that provide that the statement must be provable as false, the statement must be understandable as stating actual facts about the plaintiff, and in the case of a public-official or public-figure plaintiff, the plaintiff must prove actual malice by clear and convincing evidence are not exclusive to defamation claims and may be applied to the plaintiff's claims of false light

invasion of privacy and intentional infliction of emotional distress based on the same statements (US Const, Am I).

*Neal Bush* and *Karen Russell,* for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani* and *Patrick M. Barrett*), for the defendant.

Before: SAWYER, P.J., and BANDSTRA and J. B. SULLIVAN* , JJ.

J. B. SULLIVAN, J. Plaintiff Jennifer Ireland appeals as of right from the trial court's order granting defendant Sharon-Lee Edwards' motion for summary disposition of plaintiff's defamation and false light invasion of privacy claims, pursuant to MCR 2.116(C)(10), and her intentional infliction of emotional distress claim, pursuant to MCR 2.116(C)(8). We affirm.

This case represents, we hope, the dying embers of a highly publicized battle between plaintiff and Steven Smith for the custody of their daughter, Maranda. The custody matter was apparently resolved through a settlement, but not before almost four years of acrimonious litigation, including a six-day custody trial, an appeal to this Court,[1] an appeal to the Michigan Supreme Court,[2] and an additional four-month trial. Because this case arises from the underlying custody matter, we will briefly address the facts involved there.[3]

Defendant is the attorney who represented Smith in the custody dispute. After the first custody trial,

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] See *Ireland v Smith,* 214 Mich App 235; 542 NW2d 344 (1995).

[2] See *Ireland v Smith,* 451 Mich 457; 547 NW2d 686 (1996).

[3] The facts in the underlying matter are more fully set forth in the Supreme Court's decision. See *Ireland,* n 2, *supra* at 458-461.

Macomb Circuit Judge Raymond Cashen awarded physical custody of Maranda to Smith. Judge Cashen found that plaintiff and Smith were equal with regard to all factors considered under the Michigan Child Custody Act, MCL 722.23; MSA 25.312(3), with the exception of factor e. Judge Cashen found that factor e, regarding the permanence, as a family unit, of the existing or proposed custodial homes, favored Smith. Judge Cashen's conclusion regarding factor e was premised on his finding that plaintiff planned to enroll Maranda in a day-care center while she attended classes at the University of Michigan, while Smith planned to care for Maranda in his parents' home, with their help. After the release of Judge Cashen's decision, the custody battle became the subject of much media attention, and both parties' attorneys made statements to the press.

While the custody matter was winding its way through the appellate system, plaintiff filed the current suit alleging defamation, false light invasion of privacy, and intentional infliction of emotional distress, based on twenty statements defendant made to the media. Defendant made the alleged statements on several different occasions; some were made at a press conference called by defendant, some were made during the taping of various television programs, and one was apparently made to a newspaper reporter. Four of the statements concerned plaintiff's fitness as a mother: "The fact is, this evidence overwhelmingly showed that Ireland was not a fit mother"; "[t]his case is about a woman who is not fit to raise her child and never spent any time with her child"; "[t]his woman has never been a mother"; and "Ireland is an unfit mother." Eight of the alleged state-

ments involved the amount of time plaintiff spent with Maranda: "Ireland never spent a moment with the child"; "Ireland was never home with the child"; "[t]he trial evidence all showed that Ireland was never with Maranda"; "Ireland abdicated all responsibility for the care and raising of this child to everybody"; "[i]f the child were with her mother, as she has been in the past, that means the child would never be with her mother"; "[t]hat mother was never with her child"; "[i]t doesn't matter whether she stays home and takes college credits by telephone, she's still never going to be wit [sic] hr [sic] child. She never was"; and "Ireland was never with Maranda for the first three years of Maranda's life." Five of the alleged statements indicated that plaintiff was violent and abused Maranda: "Ireland abused her child"; "Ireland was violent and assaultive"; "Ireland has a history of violence and child abuse"; "Maranda suffered a fractured arm because of Ireland's neglect"; and "Ireland hit Maranda hard enough to leave bruises on Maranda's thigh, hip and other parts of Maranda's body." The remaining alleged statements were: "Ireland did not want to take Maranda to the University of Michigan with her"; "Ireland was a pathological liar"; and "Ireland is limiting her interviews because she is holding out for the tabloids to offer her big bucks for her tale."

Plaintiff first argues that the trial court erred in granting summary disposition of her defamation claim pursuant to MCR 2.116(C)(10). We disagree. An order granting summary disposition is reviewed de novo on appeal. *Michigan Mut Ins Co v Dowell*, 204 Mich App 81, 86; 514 NW2d 185 (1994). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests

whether there is factual support for a claim. *Michigan Mut,* at 85. The motion may be granted when, except with regard to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence presented. *Id.* Giving the benefit of the doubt to the nonmoving party, the court must determine whether a record might be developed that would leave open an issue on which reasonable minds might differ. *Id.* When First Amendment freedoms are involved, this Court's role takes on added importance:

> When addressing defamation claims implicating First Amendment freedoms, appellate courts must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression and to examine the statements and circumstances under which they were made to determine whether the statements are subject to First Amendment protection. [*Northland Wheels Roller Skating Center, Inc v Detroit Free Press, Inc,* 213 Mich App 317, 322; 539 NW2d 774 (1995). ]

Thus, we recognize that we must consider society's interest in free expression, in addition to the interests of the individual parties. We also recognize that summary disposition is an essential tool in the protection of First Amendment rights.[4] We begin our review of the relevant law with these principles in mind.

---

[4] This Court and others have recognized this principle:

"Summary judgment is particularly appropriate at an early stage in cases where claims of libel or invasion of privacy are made against publications dealing with matters of public interest and concern. In recognition of the constitutional privilege of free expression secured by the First and Fourteenth Amendments, the

A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual. *New Franklin Enterprises v Sabo*, 192 Mich App 219, 221; 480 NW2d 326 (1991). However, not all defamatory statements are actionable. If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment. *Milkovich v Lorain Journal Co*, 497 US 1, 20; 110 S Ct 2695; 111 L Ed 2d 1 (1990); *Garvelink v Detroit News*, 206 Mich App 604, 608-609; 522 NW2d 883 (1994). Thus, at least some expressions of opinion are protected. *Milkovich*, at 18-20.

Where a defendant's statements are not protected by the First Amendment, a plaintiff can establish a defamation claim by showing: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). *New Franklin Enter-*

---

courts in libel actions have recognized the need for affording summary relief to defendants in order to avoid the 'chilling effect' on freedom of speech and press." [*Lins v Evening News Ass'n*, 129 Mich App 419, 425; 342 NW2d 573 (1983), quoting *Meeropol v Nizer*, 381 F Supp 29, 32 (SD NY, 1974). ]

"Summary judgment is an integral part of the constitutional protection afforded defendants in actions such as this. Plaintiff has purposely been given the heavy burden of proving actual malice . . . . When it has been established . . . that he cannot meet it, the First Amendment makes it incumbent upon the Court to grant defendant's motion for summary judgment." [*Hayes v Booth Newspapers, Inc*, 97 Mich App 758, 775; 295 NW2d 858 (1980), quoting *Cerrito v Time, Inc*, 302 F Supp 1071, 1075-1076 (ND Cal, 1969). ]

*prises, supra* at 221. Furthermore, because the parties here agree that plaintiff is a limited-purpose public figure,[5] she must establish that defendant made the statements with actual malice. *Id.* at 222. Actual malice exists where the publication was made with knowledge of the falsity of the statements or with reckless disregard of their truth or falsity. *Id.* at 221. Plaintiff bears the burden of showing actual malice by clear and convincing evidence. *Milkovich, supra* at 15; *Garvelink, supra* at 608.

Before addressing the alleged defamatory statements, we note that both parties make it a point to accuse the other of starting and encouraging the media frenzy in this case. Indeed, defendant asserted this as a defense below, arguing that she was entitled to respond after plaintiff's attorney made disparaging remarks about her client. While we understand that an attorney may feel compelled to respond to media attacks on her client, an attorney is never justified in knowingly making false statements about an opposing party. In short, "he started it" is not a valid defense to a defamation claim where a plaintiff can show actual malice.[6]

In granting summary disposition for defendant, the trial court concluded that plaintiff would be unable to establish that defendant made any of the alleged

---

[5] Plaintiff conceded in the trial court that she is a limited-purpose public figure. In addition, the trial court specifically found that plaintiff is a limited-purpose public figure. Plaintiff has not challenged this finding on appeal, and, in any event, the facts support a conclusion that plaintiff is a limited-purpose public figure. See *Hayes,* n 4, *supra* at 774.

[6] A party's interaction with the media may, however, be relevant in determining whether that party is a "public figure." See *Hayes,* n 4, *supra* at 773-774. In this case, as already noted, plaintiff conceded in the trial court that she is a limited-purpose public figure.

defamatory statements with actual malice. The trial court apparently reasoned that, because defendant's statements found support in the custody trial record, plaintiff would be unable to show that defendant made the statements knowing they were false or with reckless disregard of their truth or falsity. We agree with this reasoning with regard to some of the alleged statements. However, we conclude that the statements cannot all be grouped together and that plaintiffs claims regarding different statements fail for different reasons.

#### WHICH STATEMENTS ARE ACTIONABLE?

One of the difficulties in addressing defamation issues lies in determining whether specific statements are actionable. The United States Supreme Court has rejected the idea that all statements of "opinion" are protected. Instead, the Court has directed that a statement must be "provable as false" to be actionable. *Milkovich, supra* at 17-20.[7] By way of example, the Court suggested that the statement "In my opinion Mayor Jones is a liar" would be potentially actionable, while the statement "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin" would not be actionable. *Id.* at 20. The Court apparently intended these examples to illustrate the difference between an objectively verifiable event, such as lying, and a subjective assertion like "shows his abysmal ignorance . . . ." See *id.* at 21-22.

---

[7] The Supreme Court has applied this rule where the plaintiff is a public official or a public figure, or where the defendant is part of the media. *Milkovich, supra* at 20, n 6.

After reviewing the alleged defamatory statements in this case, we conclude that several of them are not provable as false. The question whether someone is a "fit mother," like the question whether someone is abysmally ignorant, is necessarily subjective. Thus, defendant's statements regarding plaintiff's fitness as a mother are not actionable.[8]

The Supreme Court has also recognized that certain *types* of speech are protected. *Id.* at 16-17. While the Court has not given any precise test for determining whether particular statements are protected, the reasoning appears to be that certain statements, although factual on their face, and provable as false, could not be interpreted by a reasonable listener or reader as stating actual facts about the plaintiff. See *Hustler Magazine, Inc v Falwell*, 485 US 46, 50; 108 S Ct 876; 99 L Ed 2d 41 (1988); *Milkovich, supra* at 16-17. Thus, parodies, political cartoons, and satires are generally entitled to protection. *Garvelink, supra* at 610. However, protection is not limited to these forms. In *Greenbelt Cooperative Publishing Ass'n, Inc v Bresler*, 398 US 6; 90 S Ct 1537; 26 L Ed 2d 6 (1970), the Supreme Court recognized that some statements, read in context, are not capable of defamatory interpretation. There, a real estate developer was involved in two simultaneous negotiations with the city of Greenbelt, Maryland. One negotiation involved the developer's desire to obtain a zoning

---

[8] Those statements are: "The fact is, this evidence overwhelmingly showed that Ireland was not a fit mother"; "[t]his case is about a woman who is not fit to raise her child and never spent any time with her child"; "[t]his woman has never been a mother"; and "Ireland is an unfit mother." Just as the words "In my opinion . . ." do not make the phrase that follows a pure opinion, the words "The fact is . . ." do not make the phrase that follows an objectively provable fact.

variance for some of his property, while the other negotiation involved the city's desire to purchase certain other land from him. *Id.* at 7. The concurrent negotiations provided both parties with significant bargaining leverage, and some community members described the developer's bargaining position as "blackmail." *Id.* After a local newspaper printed two articles using the term "blackmail," the developer sued, claiming that the articles effectively charged him with the crime of blackmail. The Supreme Court rejected this argument:

> [W]e hold that the imposition of liability on such a basis was constitutionally impermissible—that as a matter of constitutional law, the word "blackmail" in these circumstances was not slander when spoken, and not libel when reported
> . . . .
>
> *          *          *
>
> . . . [E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable. [*Id.* at 13-14.]

Thus, statements must be viewed in context to determine whether they can reasonably be understood as stating actual facts about the plaintiff.

Here, many of the alleged defamatory statements, read or heard in context, could not reasonably be understood as stating actual facts about plaintiff. In particular, the statements regarding the amount of time plaintiff spent with Maranda amount to "rhetori-

cal hyperbole."[9] These were obviously expressions of disapproval regarding the amount of time plaintiff spent with her child, and, taken literally, they are patently false. However, any reasonable person hearing these remarks in context would have clearly understood what was intended. Under these circumstances, these statements are not actionable. *Id.* at 14.

As a final preliminary matter, a court may decide as a matter of law whether a statement is actually capable of defamatory meaning. *Sawabini v Desenberg*, 143 Mich App 373, 379; 372 NW2d 559 (1985). Where no such meaning is possible, summary disposition is appropriate. *Id.* A communication is defamatory if, considering all the circumstances, it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Id.* at 379-380. After reviewing the remaining statements, we conclude that they are at least potentially capable of defamatory meaning. The statements that suggested that plaintiff abused her child are clearly defamatory, as is the statement that plaintiff was a liar. The two remaining statements, "Ireland did not want to take Maranda to the University of Michigan with her"; and "Ireland is limiting her interviews because she is holding out for the tabloids to offer her big bucks for her

---

[9] The specific statements are: "Ireland never spent a moment with the child"; "Ireland was never home with the child"; "[t]he trial evidence all showed that Ireland was never with Maranda"; "Ireland abdicated all responsibility for the care and raising of this child to everybody"; "[i]f the child were with her mother, as she has been in the past, that means the child would never be with her mother"; "[t]hat mother was never with her child"; "[i]t doesn't matter whether she stays home and takes college credits by telephone, she's still never going to be wit [sic] hr [sic] child. She never was"; and "Ireland was never with Maranda for the first three years of Maranda's life."

tale," are not so clearly defamatory. However, considering the context, we decline to hold as a matter of law that they are incapable of defamatory meaning. Thus, these statements are at least potentially actionable.

WAS SUMMARY DISPOSITION PROPERLY GRANTED WITH REGARD<br>TO THE REMAINING STATEMENTS?

With regard to the potentially actionable statements identified above, our next task is to determine whether there was a genuine issue of material fact regarding plaintiff's defamation claim.

One of the potentially actionable defamatory statements can be found not to be actionable when we consider the undisputed facts. There is no dispute that Maranda suffered a fractured arm or wrist[10] while under plaintiff's supervision at a playground. Thus, the falsity of the statement that "Maranda suffered a fractured arm because of Ireland's neglect" is disputed only with regard to whether the fall was due to neglect. However, this question, like the question whether someone is a fit mother, or whether someone is abysmally ignorant, can only be answered subjectively. We conclude that this portion of the statement is not provable as false and, thus, that it is protected opinion. *Milkovich, supra* at 17-22. As the Supreme Court has observed, "[h]owever pernicious an opinion may seem, we depend for its correction

---

[10] Plaintiff does not dispute as irrelevant the fact that Maranda may have suffered a fractured wrist, rather than a fractured arm. In Michigan, substantial truth may be a defense: "Under the test, minor differences are immaterial if the literal truth produces the same effect." *Koniak v Heritage Newspapers, Inc (On Remand)*, 198 Mich App 577, 580; 499 NW2d 346 (1993).

not on the conscience of judges and juries but on the competition of other ideas."[11]

As noted above, the remaining potentially actionable statements are capable of defamatory interpretation. In addition, defendant stipulated, at least for summary disposition purposes, that she made the statements to a third party. Finally, in her motion for summary disposition below, defendant did not raise any question regarding the necessity or absence of special harm.[12] Thus, the only elements that could support the grant of summary disposition are falsity and actual malice.

We believe that there is a genuine issue of material fact regarding whether the statements are false. While defendant has pointed to evidence in the record from the custody proceedings to support each of her statements, plaintiff vigorously disputed their accuracy. Indeed, both sides find some support in the various depositions, affidavits, and trial testimony. This obviously presents a genuine issue of material fact for the jury. See *Locricchio v Evening News Ass'n*, 438 Mich 84, 137; 476 NW2d 112 (1991) (CAVANAGH, J., concurring) (The Supreme Court has "consistently viewed the determination of truth or falsity in defamation cases as a purely factual question which should generally be left to the jury."). Thus, in this case, sum-

---

[11] Justice Brandeis expressed the same idea using language that is slightly ironic in the context of this case: "the fitting remedy for evil counsels is good ones." *Whitney v California*, 274 US 357, 375; 47 S Ct 641; 71 L Ed 1095 (1927).

[12] Even had defendant raised this issue below, it seems clear that plaintiff's claim could have survived a motion for summary disposition on this point. See *Hall v Citizens Ins Co of America*, 141 Mich App 676, 686; 368 NW2d 250 (1985).

mary disposition would not be appropriate with regard to the question of falsity.

Despite the existence of a factual dispute regarding the falsity of the alleged defamatory statements, we still conclude that summary disposition was properly granted for defendant. As noted above, plaintiff must show actual malice in order to maintain her claim of defamation. *New Franklin Enterprises, supra* at 222. A prior panel of this Court addressed the definition of "actual malice":

> Actual malice is defined as knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not. Reckless disregard for the truth is not established merely by showing that the statements were made with preconceived objectives or insufficient investigation. Furthermore, ill will, spite or even hatred, standing alone, do not amount to actual malice. "Reckless disregard" is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher in fact entertained serious doubts concerning the truth of the statements published. [*Grebner v Runyon*, 132 Mich App 327, 332-333; 347 NW2d 741 (1984) (citations omitted).]

Whether the evidence in a defamation case is sufficient to support a finding of actual malice is a question of law. *Id.* In considering a motion for summary disposition, a court must consider whether the evidence is sufficient to allow a rational finder of fact to find actual malice by clear and convincing evidence. *Anderson v Liberty Lobby, Inc*, 477 US 242, 254; 106 S Ct 2505; 91 L Ed 2d 202 (1986).[13]

---

[13] It appears that there was a conflict of opinion in this Court on this subject. Compare *Spreen v Smith*, 153 Mich App 1, 7; 394 NW2d 123 (1986) (clear and convincing evidence not required to withstand a motion

Here, plaintiff has not pointed to any evidence of actual malice.[14] In contrast, defendant filed an affidavit stating that she made the statements believing them to be true, based on the record evidence in the custody dispute. Thus, summary disposition would appear to be proper on this basis. Plaintiff argues, however, that summary disposition was premature, because there has been no discovery. Plaintiff ignores the fact that there was extensive discovery in the underlying custody case, much of which bears directly on the truth or falsity of the statements at issue. In addition, plaintiff has not described any type of discovery that could possibly uncover evidence of actual malice. Summary disposition is appropriate where no fair chance exists that further discovery will result in factual support for the nonmoving party. *Northland Wheels, supra* at 329-330. Here, we do not believe that there is any fair chance that further discovery would uncover sufficient evidence to show actual malice by clear and convincing evidence. Thus,

---

for summary disposition), with *Lins*, n 4, *supra* at 433-434 (clear and convincing evidence required). However, *Anderson* clearly resolved this conflict, finding the clear and convincing evidence standard relevant to the resolution of a motion for summary disposition. *Anderson, supra* at 254. We believe that some Michigan cases decided before *Anderson* are now of questionable precedential value regarding the quantum of evidence necessary to establish actual malice, because they failed to apply the clear and convincing evidence standard. See, i.e., *Steadman v Lapensohn*, 408 Mich 50, 54-55; 288 NW2d 580 (1980).

[14] Plaintiff argues that Judge Cashen's original opinion, finding that plaintiff and Smith were both equally capable of raising Maranda, put defendant on notice that all her subsequent statements were false. We find no merit in this contention. Nothing in Judge Cashen's opinion made any reference to the specific issues addressed in defendant's statements. Under these circumstances, it cannot be said that, on the basis of Judge Cashen's opinion, defendant knew or should have known that her subsequent statements were false. See *Swenson-Davis v Martel*, 135 Mich App 632, 637-638; 354 NW2d 288 (1984).

summary disposition was properly granted with regard to plaintiff's defamation claim. We recognize that this result effectively protects statements that may very well have been false. However, "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters." *Gertz v Robert Welch, Inc,* 418 US 323, 341; 94 S Ct 2997; 41 L Ed 2d 789 (1974); *Locricchio, supra* at 121.

### PLAINTIFF'S CLAIMS ALLEGING FALSE LIGHT INVASION OF PRIVACY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Supreme Court has made it clear that the above limitations on actionability (statements must be provable as false, statements must be understandable as stating actual facts about the plaintiff, and, in the case of public-official or public-figure plaintiffs, the plaintiffs must prove actual malice by clear and convincing evidence) are First Amendment limitations. *Hustler Magazine, supra.* It is clear that these limitations are not exclusive to defamation claims. *Id.* We conclude that these limitations apply to all of plaintiff's claims in this case.[15] Thus, because all of plaintiff's claims are based on the same statements, and because she cannot overcome the First Amendment limitations regarding these statements, summary

---

[15] As the Supreme Court noted in *New York Times Co v Sullivan,* 376 US 254, 269; 84 S Ct 710; 11 L Ed 2d 686 (1964), an action for libel "can claim no talismanic immunity from constitutional limitations." We do not believe that actions for false light invasion of privacy or intentional infliction of emotional distress have any greater right to such immunity. Indeed, any other conclusion would allow a plaintiff to circumvent the First Amendment limitations, and would effectively eliminate the "breathing space" required for freedom of expression. *Hustler Magazine, supra* at 52.

disposition was properly granted with regard to all of plaintiff's claims.[16]

Affirmed.

---

[16] We recognize that the trial court granted summary disposition on different grounds than we rely on here. However, we will not reverse where a trial court reaches the right result for the wrong reason. *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993).