# STATE OF MICHIGAN

# COURT OF APPEALS

TODD L. LEVITT and LEVITT LAW FIRM, P.C.,

    Plaintiffs-Appellants,

v

ZACHARY FELTON,

    Defendant-Appellee.

UNPUBLISHED
May 19, 2016

No. 326362
Isabella Circuit Court
LC No. 2014-011644-NZ

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

In this dispute arising from a Twitter account, plaintiffs, Todd Levitt and Levitt Law Firm, P.C., appeal as of right the trial court's order granting summary disposition to defendant, Zachary Felton, pursuant to MCR 2.116(C)(10) (no genuine issues of material fact). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Todd Levitt is an attorney and a former adjunct professor at Central Michigan University (CMU). Allegedly, university students are a primary clientele of plaintiff law firm. Levitt was actively involved in marketing his law firm on various social media platforms, including Twitter. His since-deleted Twitter account represented that he was a "badass lawyer." In addition to promoting his law practice on Twitter, Levitt admittedly made several posts which referenced marijuana and alcohol use. For instance, he posted a tweet about serving alcohol in a class he taught at CMU, and in another, stated that "Mr. Jimmy Beam just confirmed a guest appearance in class next week." In other tweets, he reminisced about his days as a student at CMU, stating that he "tore it up" in the 1980s, and warning students not to "jump [while] drunk" in the elevators at a certain dormitory. He tweeted about being a guest bartender at a local bar and about throwing an end-of-semester party. He also referenced marijuana in several tweets; in one tweet he posted an ode to "mommy marijuana," who "always put me at ease." In addition, he tweeted that if marijuana were legal in Mount Pleasant, Michigan, the CMU "dorms would look like they were on fire."

-1-

In April 2014, Levitt, who identified himself on Twitter as "Todd Levitt@levittlaw," noticed an unidentified individual had created an account, "Todd Levitt 2.0 @levittlawyer" that included a photograph of Levitt and a logo used by his law firm. Levitt later discovered, and defendant admitted as much, that defendant, a CMU student at the time, was responsible for the imposter Twitter account. Levitt alleged that defendant attempted to confuse Levitt's Twitter followers by using his likeness and logo. He also alleged that defendant attacked his credibility as an attorney and as a professor by posting the following tweets to the imposter account:

1. "What's the difference between the internet and my tweeted legal advice? A: none. They're both 100% accurate!"

2. "Buying me a drink at Cabin Karaoke will get you extra [credit], but it's not like that matters because you are guaranteed an A in syllabus."

3. "Partying = Defense Clients[.] Defense Clients = Income[.] If I endorse partying, will my income grow? It's like a Ponzi scheme for lawyers!"

4. "@twebbsays should either meet me at 4/20 in my satellite office or take a hiatus from the medical card" and "#inToddWeToke" and "4/20 = Pot smoking holiday[.] Possession of marijuana = Client[.] Client = Income[.] In the words of Snoop Dogg: smoke weed every day. #inToddWeToke[.]"

After allegedly enduring defendant's harassment for two weeks, Levitt deleted his Twitter account to "prevent further damage to his reputation." Levitt contended that during the two-week period, he received dozens of phone calls from clients, potential clients, and parents who were distressed that Levitt had exhibited the behaviors discussed in defendant's tweets. According to plaintiffs, two potential clients also informed Levitt that they declined to hire him because they believed that defendant's tweets were an accurate representation of his character. Levitt contended that he could not continue as an adjunct professor and has suffered loss of income. Plaintiffs' theories of liability against defendant included claims of false light, intentional infliction of emotional distress, libel, tortious interference with business relations, defamation per se, business defamation, and unfair competition. Plaintiffs asked for the immediate termination of the "Todd Levitt 2.0 @levittlawyer" Twitter account in order to prevent future injuries to their reputation and business.

In answering the complaint, defendant admitted that he was responsible for the imposter account and characterized the account as a "parody." He asserted that on April 15, 2014, he posted this tweet: "Remember Kiddoes, parody accounts are #badass and #lawful." On April 16, 2014, he posted: "Word of the day for @twebbsays is satire. Three syllables. Once you get a grasp of the concept a lot of things will start making sense." And on April 22, 2014, he tweeted the following disclaimer: "A gentle reminder to potential seekers of Todd Levitt: This is not him. This is a parody account. You can find the real Todd(ler)@levittlaw."

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that the posts were constitutionally protected free speech. The trial court granted defendant's motion for summary disposition and held that:

Defendant's Twitter account, Todd Levitt 2.0, is a parody account that is protected under the First Amendment of the United States Constitution. The [t]weets are meant to ridicule and satirize plaintiff's social media presence in a humorous way. However, whether defendant succeeded in creating a *humorous* parody is irrelevant for purposes of the First Amendment. It is clear that Todd Levitt 2.0 cannot reasonably be interpreted as anything other than a parody account. Therefore, it is protected speech under the First Amendment.

In reaching this holding, the court also reasoned that defendant's disclaimers were sufficient to put a reasonable person on notice that the tweets were not from Levitt.

## II. ANALYSIS

Plaintiffs argue that the court erred in granting summary disposition to defendant. An appellate court reviews de novo a circuit court's summary disposition ruling. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph*, 491 Mich at 206. Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). The court considering the motion "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Joseph*, 491 Mich at 206. All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

Plaintiffs' various claims are premised on the notion that the statements posted to the imposter Twitter account were defamatory. In resolving these claims, we must keep in mind that

[w]hen addressing defamation claims implicating First Amendment freedoms, appellate courts must make an independent examination of the records to ensure against forbidden intrusions into the field of free expression and to examine the statements and circumstances under which they were made to determine whether the statements are subject to First Amendment protection. [*Northland Wheels Roller Skating Ctr, Inc v Detroit Press, Inc*, 213 Mich App 317, 322; 539 NW2d 774 (1995).]

"A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *New Franklin Enterprises v Sabo*, 192 Mich App 219, 221; 480 NW2d 326 (1991). However, "[t]he First Amendment protects statements that cannot be interpreted as stating actual facts about an individual from serving as the basis for a defamation action or similar claim under state law." *Ghanam v Does*, 303 Mich App 522, 545-546; 845 NW2d 128 (2014). "Such statements include the usual rhetorical hyperbole and imaginative expression often found in satires, parodies, and cartoons." *Id*. at 546, citing *Hustler Magazine, Inc v Falwell*, 485 US 46, 53-54; 108 S Ct 876; 99 L Ed 2d 41 (1998). The statements are protected if they, "although factual on their face, and provable as false, could not be interpreted by a reasonable listener or reader as stating actual

-3-

facts about the plaintiff." *Ireland v Edwards*, 230 Mich App 607, 617; 584 NW2d 632 (1998). Further, parodies and satire are protected even when they are intended to be highly offensive of the person criticized. *Ghanam*, 303 Mich App at 546. When evaluating allegedly defamatory statements, we consider whether a reasonable reader, viewing the statements in context, would understand the statements to be "rhetorical hyperbole." *Id*. (citation and quotation marks omitted).

When read in context, defendant's tweets are a parody and cannot reasonably be interpreted as coming from Levitt, an attorney and college professor. The cited tweets ridicule and demean the legal profession, as well as Levitt's status as an attorney and a college professor. In particular, some of the tweets encourage followers to commit alcohol and drug-related offenses in order to further Levitt's business. As aptly stated by the trial court, "[i]t would be quite foolish for an attorney to outright state by way of self-promotion that he wants college students to drink and use illegal drugs so that he can increase his income by defending them in court." Other tweets suggest that Levitt's students can earn extra credit in his class by buying him a drink. Surely this statement cannot be interpreted as coming from a college professor. As noted by the trial court, when the challenged tweets are read in the context of Levitt's own tweets, a reasonable person would see defendant's tweets as attempting to ridicule and satirize Levitt's tweets about alcohol and marijuana use. See *Ireland*, 230 Mich App at 618-619 (examining allegedly defamatory statements and concluding that they were "rhetorical hyperbole" because "any reasonable person hearing these remarks in context would have clearly understood what was intended.").

Moreover, the idea that the tweets were a parody is soundly reinforced by several disclaimers posted to the imposter account stating that the account was indeed a parody. At the outset, the account itself was styled as "Todd Levitt 2.0," which has come to be commonly accepted jargon for describing an upgrade of an original concept. Thus, "Todd Levitt 2.0" signals that the account was identifying itself as a superior or upgraded version of Levitt, which hints at the notion that it is a spoof. Further, defendant's tweets expressly stated, on multiple occasions, that the account was intended as a parody. For instance, one tweet read that the account was "[a] badass parody of our favorite lawyer . . . ." Another gave a "gentle reminder to potential seekers of Todd Levitt: *This is not him. This is a parody account.* You can find the real Todd(ler) @levittlaw." (Emphasis added). In light of these statements, a reasonable reader could not have interpreted the account as stating actual facts about Levitt.

Contrary to the suggestions made by plaintiffs on appeal, it does not take any factual determinations or fact-finding in order to conclude that the challenged tweets are not actionable. "[A] court may decide as a matter of law whether a statement is actually capable of defamatory meaning." *Ireland*, 230 Mich App at 638. "Where no such meaning is possible, summary disposition is appropriate." *Id*. Because the statements at issue in this case could not reasonably

be interpreted as factual statements by or about Levitt, summary disposition in favor of defendant was appropriate.[1]

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering

---

[1] Because all of plaintiffs' claims were premised on the allegedly defamatory statements, we conclude that the trial court properly dismissed all of the claims, notwithstanding the different labels placed on the claims. See *Ireland*, 230 Mich App at 624-625. Moreover, we reject plaintiffs' fleeting request on appeal that they should be given the opportunity to amend the complaint. Plaintiffs fail to specify how they could have amended the complaint, and we find their cursory request to be abandoned. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008).