*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIN L. DAOUST,

       Plaintiff-Appellant,

v

WALTER ROBERT REID,

       Defendant-Appellee.

UNPUBLISHED
January 19, 2023

No. 361405
Alpena Circuit Court
LC No. 21-001128-CZ

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Plaintiff Erin Daoust appeals by right the trial court's order granting defendant Walter Reid's motion for summary disposition of plaintiff's defamation and false-light invasion of privacy claims related to a blog post defendant made on his website. We affirm.

## I. FACTUAL BACKGROUND

Shortly after midnight on August 19, 2019, in Alpena County, plaintiff's 30-year-old daughter died from an off-road vehicle rollover accident. Plaintiff went to the scene and waited with her husband and friends, Terry King, a former county sheriff's officer, and his wife, while law enforcement officers investigated. The responding officer called Sheriff Steven Kieliszewski regarding an accident reconstruction. Months later in a Facebook post, plaintiff criticized Sheriff Kieliszewski regarding the amount of time it took him to report to the accident scene. Defendant read plaintiff's Facebook post and obtained a copy of the accident incident report. On July 2, 2020, defendant posted on his website the following:

Fatal Rollover Being Politicized

There was a rollover accident that occurred on August 19th, 2019, in which a sweet young lady lost her life.

Unfortunately, her mother, rumored to be a member of Terry King's Campaign Committee, has made strong accusations against the Sheriff regarding the accident that merited the FOIA'ing of the Incident to uncover the FACTS. It is with a sad

-1-

heart we include the incident report in the Evidence Folder and address the matter here.

CLAIM: The mother is claiming it took the Sheriff nearly 2 hours to respond to the accident.

FACTS: The logs received in the incident report (pg 141) show the Sheriff was contacted at 12:31am to perform a reconstruction investigation of the accident. The logs then show the Sheriff leaving his home to the site, which was about 2.5 miles away, at 1:14am. With a maximum 5 minute drive, the time of initial contact to the time of arrival at the scene would be approximate 50 minutes total.

The blood test for alcohol content (pg 18) of the young lady who passed away and was determined to be the driver was registered as 0.14, which is nearly double the 0.08 level which qualifies as operating while intoxicated.

The mother references evidence that was not recovered by the Alpena County Sheriff's Office the night of the crash.

One piece was a sheared bolt (pg 13) the mother took to the Michigan State Police-Alpena Post on 8/23. The conclusion was the sheared surface was rusted over and could not have been sheared as the result of the accident.

Another piece of evidence not recovered at the crash site was the young lady's phone. At the accident scene, the mother was told by an Alpena County Sheriff's Sergeant that the Deputies and State Police were searching extensively for the young lady's cellphone as evidence in the accident investigation.

When the accident occurred, the passenger could not roll the UTV off the young lady and called a neighbor for help. According to the neighbor (pg 11), the neighbor saw the young lady's phone on the ground, picked it up, and put it in his pocket, and forgot about it.

After the neighbor returned home, the mother entered his home to use the restroom, then yelled at him to keep his mouth shut and yelled at him for letting them drink at his home.

While the mother was yelling at him, the neighbor put his hands in his pocket and discovered the cellphone. He removed it from his pocket and gave it to the mother.

The mother knew the officers needed the cellphone as evidence in the reconstruction investigation, but did not surrender the cellphone to the officers and has still not done so.

The conclusion appears to be the Sheriff's Office and State Troopers responded in reasonable times and followed the correct protocol on scene during the investigation. The only irregularity seems to be the withholding of evidence by the mother.

Almost a year later, plaintiff filed a two-count complaint alleging that defendant committed defamation per se and false-light invasion of privacy. Defendant answered by denying that his blog post made him liable to plaintiff. Later he moved for summary disposition under MCR 2.116(C)(10). The trial court granted defendant summary disposition of both of plaintiff's claims. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo whether the trial court properly applied the constitutional standard for defamation. *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020). The party who moves for summary disposition under MCR 2.116 bears the initial burden of production, which may be satisfied in one of two ways. *Quinto v Cross and Peters Co*, 451 Mich 358, 361; 547 NW2d 314 (1996). The moving party may either submit affirmative evidence that negates an essential element of the nonmoving party's claim or demonstrate to the trial court that the nonmoving party's evidence fails to establish an essential element of the nonmoving party's claim. *Id*. at 362. Once the moving party satisfies its burden in one of those two ways, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. The reviewing court "should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered." *Maiden*, 461 Mich at 121.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of claims and the moving party bears the burden of establishing with admissible evidence its entitlement to judgment as a matter of law. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). If the nonmoving party fails to establish the existence of a genuine issue of material fact, the trial court must enter judgment for the moving party. *Id*. at 537. "A genuine issue of material fact exists when, viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on an issue." *Id*. A trial court's grant of summary disposition under MCR 2.116(C)(10) is proper when the evidence, "viewed in the light most favorable to the nonmoving party, show[s] that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

## III. ANALYSIS

Plaintiff first argues that the trial court erred because a genuine issue of material fact existed whether defendant negligently made a defamatory statement that plaintiff withheld evidence, and erred by concluding that defendant's defamatory statement merely expressed an opinion. We disagree.

"A defamatory communication is one that tends to harm the reputation of a person so as to lower him in the estimation of the community or deter others from associating or dealing with him." *Lawrence v Burdi*, 314 Mich App 203, 214; 886 NW2d 748 (2016) (quotation marks and citation omitted). "The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by

publication." *Bedford v Witte*, 318 Mich App 60, 64-65; 896 NW2d 69 (2016) (quotation marks and citation omitted). In *Ghanam v Does*, 303 Mich App 522, 545-547; 845 NW2d 128 (2014), this Court explained:

> To be considered defamatory, statements must assert facts that are "provable as false." Even statements couched in terms of opinion may often imply an assertion of objective fact and, thus, can be defamatory. The dispositive question is whether a reasonable fact-finder could conclude that the statement implies a defamatory meaning.

> Accusations of criminal activity are considered "defamation per se" under the law and so do not require proof of damage to the plaintiff's reputation. However, not all statements that can be read as accusations of a crime or misconduct should be considered assertions of fact. The First Amendment protects statements that cannot be interpreted as stating actual facts about an individual from serving as the basis for a defamation action or similar claim under state law. Such statements include the usual rhetorical hyperbole and imaginative expression often found in satires, parodies, and cartoons. This is true even when the statements are designed to be highly offensive to the person criticized, and even if, when read literally, the statements can be interpreted as accusations of criminal activity. Terms such as "blackmailer," "traitor," "crook," "steal," and "criminal activities" must be read in context to determine whether they are merely exaggerations of the type often used in public commentary. Casual use of these terms and similar epithets is the language of the rough-and-tumble world of politics. It is core political speech. It is consumed by an often skeptical and wary electorate and is not seriously regarded as asserting factual truth. If a reasonable reader would understand these epithets as merely "rhetorical hyperbole" meant to express strong disapproval rather than an accusation of criminal activity or actual misconduct, they cannot be regarded as defamatory.

> The context and forum in which statements appear also affect whether a reasonable reader would interpret the statements as asserting provable facts. Courts that have considered the matter have concluded that Internet message boards and similar communication platforms are generally regarded as containing statements of pure opinion rather than statements or implications of actual, provable fact. Any reader familiar with the culture of most electronic bulletin boards would know that board culture encourages discussion participants to play fast and loose with facts. Indeed, the very fact that most of the posters remain anonymous, or pseudonymous, is a cue to discount their statements accordingly.

> > Ranked in terms of reliability, there is a spectrum of sources on the internet. For example, chat rooms and blogs are generally not as reliable as the Wall Street Journal Online. Blogs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, they are not a source of facts or data upon which a reasonable person would rely. [Quotation marks, ellipses, alteration, and citations omitted.]

"[P]rivate-figure defamation plaintiffs are only constitutionally required to prove ordinary negligence in order to establish defamation . . . ." *J & J Constr Co v Bricklayers and Allied Craftsmen, Local 1*, 468 Mich 722, 735; 664 NW2d 728 (2003). "Privilege can be used as a defense in a defamation action." *Bedford*, 318 Mich App at 65.

Under MCL 600.2911(1), words that impute the commission of a criminal offense are actionable in themselves. This statutory provision "is the codification of the common-law principle that words imputing . . . the commission of a crime constitute defamation per se and are actionable even in the absence of an ability to prove actual or special damages[.]" *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 728; 613 NW2d 378 (2000). MCL 600.2911 further provides in relevant part:

> (3) If the defendant in any action for slander or libel gives notice in a justification that the words spoken or published were true, this notice shall not be of itself proof of the malice charged in the complaint though not sustained by the evidence. In an action for slander or for publishing or broadcasting a libel even though the defendant has pleaded or attempted to prove a justification he or she may prove mitigating circumstances including the sources of his or her information and the ground for his or her belief. Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report. This privilege shall not apply to a libel which is contained in a matter added by a person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, which was not a part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body.
>
> * * *
>
> (7) An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.

This Court explained in *Bedford* the "fair and true reporting privilege" provided under MCL 600.2911(3) as follows:

> In order for a report to be privileged under this statute, the report must be "fair and true . . . ." In other words, the report must "substantially represent" the public record or other pertinent matter. If any inaccuracy does not alter the effect the literal truth would have on the recipient of the information, the pertinent standard has been satisfied. [*Bedford*, 318 Mich App at 66 (citations omitted).]

In *Lawrence*, the Court further explained:

> It has long been established that words charging the commission of a crime are defamatory per se, and hence, injury to the reputation of the person defamed is presumed to the extent that the failure to prove damages is not a ground for dismissal. With the first element of a defamation claim being a false statement, it naturally follows that a statement which is "substantially true" is a defense to a charge of defamation by implication. Furthermore, defendants in defamation suits are not required to prove the statement is literally and absolutely accurate in every minute detail. [*Lawrence*, 314 Mich App at 214-215 (quotation marks and citations omitted).]

"Whether a statement is actually capable of defamatory meaning is a preliminary question of law for the court to decide." *Sarkar v Doe*, 318 Mich App 156, 179; 897 NW2d 207 (2016) (quoting *Ghanam*, 303 Mich App at 544). "A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *Ireland v Edwards*, 230 Mich App 607, 614; 584 NW2d 632 (1998) (citation omitted). "However, not all defamatory statements are actionable. If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Id.* (citation omitted).[1]

In *Sarkar*, a case involving the anonymous Internet publication of criticisms of a professor's research, this Court summarized:

> To be considered defamatory, statements must assert facts that are provable as false. Nevertheless, state and federal courts alike have consistently held that when a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment. That is, when a speaker presents a factual basis for the opinion he or she reached, the opinion is not capable of defamatory meaning. [*Sarkar*, 318 Mich App at 195-196 (quotation marks and citations omitted).]

In this case, plaintiff contends that defendant committed defamation per se by imputing to her the commission of a criminal offense in his blog post. Defendant counters that he merely stated what the police accident incident report stated, that his statements were true, and that he confirmed the accuracy of his statements before posting them on his blog by contacting Alpena County Sheriff's Department Sergeant Michael Jones who authored the incident report. The trial court examined the record and concluded that plaintiff could not succeed on her claims because defendant merely expressed a nondefamatory opinion that he based on the incident report which

---

[1] The First Amendment of the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." US Const, Am 1. The First Amendment is applicable to the states under the Fourteenth Amendment. *Schneider v New Jersey*, 308 US 147, 160; 60 S Ct 146; 84 L Ed 155 (1939). The Michigan Constitution provides: "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5.

he confirmed with Sergeant Jones. "When addressing defamation claims, appellate courts must make an independent examination of the record to ensure against forbidden intrusions into the field of free expression." *Kevorkian v American Med Ass'n*, 237 Mich App 1, 5; 602 NW2d 233 (1999) (citation omitted).

Close analysis of relevant portions of the incident report and comparison of them with relevant portions of defendant's blog post statements is necessary for the determination whether defendant defamed plaintiff. Four paragraphs of defendant's blog post are relevant to this analysis. The first stated:

> Another piece of evidence not recovered at the crash site was the young lady's phone. At the accident scene, the mother was told by an Alpena County Sheriff's Sergeant that the Deputies and State Police were searching extensively for the young lady's cellphone as evidence in the accident investigation.

The incident report states the following regarding Sergeant Jones's contact with plaintiff at the scene of the accident:

> After her notification and before the Sheriff's arrival I had a brief exchange with [plaintiff]. I advised her that Sheriff Kieliszewski was on his way to prepare an accident reconstruction so that we could determine what had occurred. [Plaintiff] stated that she had been texting with her daughter at 0005 hrs. I explained to [her] that we were attempting to locate her phone and that it would be helpful if I could examine her phone to compile information necessary for the investigation. I was never able to observe [plaintiff's] phone.

Comparison of this passage with defendant's related blog statement indicates that defendant did not exactly replicate the information stated in the incident report. Rather, he incorporated facts stated elsewhere in it. He also embellished the fact that Sergeant Jones indicated a desire to locate and review the decedent's cell phone for information necessary for the investigation by stating that the phone constituted evidence. That interpretation of the facts stated in the report, however, is accurate.

The next relevant paragraphs in defendant's blog post stated:

> While the mother was yelling at him, the neighbor put his hands in his pocket and discovered the cellphone. He removed it from his pocket and gave it to the mother.

> The mother knew the officers needed the cellphone as evidence in the reconstruction investigation, but did not surrender the cellphone to the officers and has still not done so.

The incident report stated:

> On the evening of 8/19/19 I spoke briefly with Don Tessmer in order that I obtain the proper address for his property where the accident took place. During this conversation I was made aware that during the confusion of the crash and attempting to get help via 911 that [plaintiff's daughter's] phone had come into the

-7-

possession of Don Tessmer. Don explained that shortly after he was allowed to leave the scene of the accident and remove his truck from the area he went home. Once there [plaintiff] arrived at his residence and let herself into his home and used the bathroom. Don stated that [plaintiff] then began screaming at him to keep his mouth shut and yelled at them for letting [her daughter] drink at their home. While he was being yelled at Don placed his hands in his pocket and realized he was in possession of [her daughter's] phone. He gave the phone to [plaintiff]. [Plaintiff] did not make police aware of this. I immediately notified Sheriff Kieliszewski of this information. I was aware that Michigan State Police K9 and other resources had searched the crash site trying to locate [the decedent's] phone.

Comparison of this passage with defendant's related blog statements indicates that defendant accurately stated some facts reported in the incident report. Defendant, however, left out information that contextualizes the timing of events, what happened and what did not. The report indicates that Sergeant Jones interviewed Tessmer briefly hours later the evening after the accident. That conversation took place many hours after the investigation at the scene concluded. Defendant does not mention that. Further, nowhere in the report is there any indication that Sergeant Jones or any other reporting officer made any contact with plaintiff after Sergeant Jones learned that plaintiff obtained possession of her daughter's cell phone from Tessmer. If the cell phone were a vital piece of evidence in the investigation, as defendant implied in his blog post, one would reasonably expect that someone from the sheriff's department would have followed up this lead.

Further analysis of the incident report, however, indicates that it also reported the following regarding further contact between plaintiff and the sheriff's department:

On the afternoon of 8/26/19 [plaintiff] was to come to the Alpena County Sheriff's Office and meet with the Sheriff and myself. [Plaintiff] cancelled the meeting but did email Sheriff Kieliszewski a text message screen shot from her phone showing her last texts with her daughter.

This passage indicates that plaintiff provided screenshots from her phone that showed her last texts with her daughter to Sheriff Kieliszewski, whom the incident report identified as the lead investigator. These facts indicate that plaintiff had contact with investigating officers and provided information regarding her daughter's cell phone use just before the accident. The incident report indicates that either plaintiff knew or anticipated what investigators sought regarding her daughter's cell phone and provided information to them.

The incident report also provided an investigative timeline that featured the text messages between plaintiff and her daughter, as well as between the decedent and Justin Timm, the person who was with the decedent during the fateful night and survived the accident. Nothing indicates in the report that Sheriff Kieliszewski, Sergeant Jones, or any other investigating officer followed up and asked for further information from plaintiff or requested that plaintiff turn over her daughter's phone to them. Defendant did not state these pertinent facts in his blog post. Instead, defendant stated that plaintiff "did not surrender the cell phone to the officers and has still not done so." Although factually accurate, that representation omitted facts that indicate that plaintiff did

-8-

not withhold information from investigators and investigators did not pursue obtaining the decedent's cell phone.

The last paragraphs in defendant's blog post which plaintiff asserts constitutes defamation per se stated:

> The conclusion appears to be the Sheriff's Office and State Troopers responded in reasonable times and followed the correct protocol on scene and during the investigation. The only irregularity seems to be withholding of evidence by the mother.

The first sentence expressed defendant's opinion that law enforcement's response and investigation indicated no irregularities in their conduct. The incident report itself merely reports that law enforcement officers responded to the scene and conducted an accident investigation. The incident report does not state a conclusion regarding the adequacy of law enforcement's response or that it followed protocol during the investigation. The report, however, indicates that nothing unusual occurred that impeded the investigation or otherwise inhibited law enforcement officers from performing their duties. The first sentence of this paragraph, therefore, expressed defendant's opinion regarding law enforcement's response based upon his interpretation of the incident report.

The second sentence of this paragraph requires close analysis to discern whether it merely expressed an opinion or directly or impliedly defamed plaintiff. Plaintiff asserts that the sentence constituted defamation per se because it states that she withheld evidence and imputed to her the commission of a criminal offense. Defendant counters that his statement that plaintiff withheld evidence was factually true based upon the incident report. Alternatively, he maintains that it merely expressed his opinion.

Analysis of the complete incident report indicates that, although plaintiff may not have turned over her daughter's cell phone to law enforcement, she provided screenshots pertinent to the investigation. Further, although not entirely clear from the content of the incident report, it appears that law enforcement obtained evidence that enabled the identification of all text messages made by and received by the decedent from two hours before her death to her last text message from plaintiff at 12:05 a.m. on August 19, 2019. The incident report suggested, if not directly indicated, that law enforcement obtained the evidence sought from the decedent's cell phone, albeit perhaps from other sources. The incident report does not state that plaintiff withheld evidence nor does it intimate that investigators concluded that she withheld evidence and violated the law.

The last sentence of defendant's blog post expresses defendant's conclusion that an "irregularity" in the investigation existed. The first sentence in the paragraph indicates that in his opinion no irregularity existed respecting law enforcement's conduct. Defendant then stated that the "only irregularity seems to be" that plaintiff withheld evidence. The words "seems to be" are not a declaration that something is. Use of the words "seems to be" is indicative that an author has the opinion that facts suggest a state of being, but the author does not, cannot, or will not definitively declare such as a matter of actual provable fact. The trial court considered defendant's use of the words "seems to be" as dispositive that defendant merely stated an opinion that could never be actionable as defamation per se. The trial court did not err in this regard because the sentence simply cannot be understood as a declaration of actual provable fact that plaintiff withheld

evidence. The sentence merely expressed an opinion. As this Court stated in *Ireland*, 230 Mich App at 614, a statement that cannot be reasonably interpreted as stating actual facts about the plaintiff is protected by the First Amendment. Further, the trial court appropriately discerned that statements such as defendant made on Internet platforms are generally regarded as "pure opinion rather than statements or implications of actual, provable fact." *Ghanam*, 303 Mich App at 546-547. Accordingly, we affirm the trial court's decision that defendant's statement did not constitute defamation per se and it properly granted summary disposition for defendant on that claim.

Defendant's contention that he merely repeated information contained in a public record and thereby could claim his statements were privileged under MCL 600.2911 lacks merit because one cannot read his blog post in conjunction with the incident report and conclude that he gave a fair and true report of matters of public record. Defendant's blog post omitted pertinent facts and stated opinions based on his selective interpretation of the report. Regardless, the record reflects that the trial court, after reaching the correct decision, properly declined to consider and rule on whether defendant could claim a privilege under MCL 600.2911. Accordingly, we need not consider whether defendant could claim his statement privileged.

Plaintiff also argues that the trial court erred by failing to find a genuine issue of fact regarding plaintiff's false-light invasion of privacy claim because the record evidence at least demonstrates the existence of a factual question of defendant's state of mind, whether he acted intentionally to harm and discredit plaintiff by the statements he made publicly. We disagree.

In *Puetz v Spectrum Health Hospitals*, 324 Mich App 51; 919 NW2d 439 (2018), this Court explained:

> An invasion-of-privacy claim protects against four types of invasion of privacy: "(1) intrusion upon the plaintiff's seclusion or solitude or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Doe v Mills*, 212 Mich App 73, 80; 536 NW.2d 824 (1995). . . . "In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Duran v Detroit News, Inc*, 200 Mich App 622, 631-632; 504 NW2d 715 (1993). Further, "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." [*Id*. at 69.]

> * * *

> A claim for false-light invasion of privacy requires that the plaintiff receive publicity. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 385; 689 NW2d 145 (2004). Publicity can be shown if the defendant "broadcast [the challenged information] to the public in general, or to a large number of people . . . ." *Duran*, 200 Mich Ap. at 631-632. The term "broadcast" means "to

-10-

make widely known." *Merriam-Webster's Collegiate Dictionary* (11th ed.). Therefore, summary disposition is appropriate when the communication is only published to a small or specific group of individuals. [*Id.* at 71.]

In this case, plaintiff's false-light invasion of privacy claim failed for two reasons. First, plaintiff failed and could not establish that defendant broadcasted false information regarding plaintiff's conduct. As explained previously, defendant stated opinions based on his interpretation of the information available to him at the time from the police incident report. Further, the record reflects that he contacted Sergeant Jones and confirmed that the incident report stated that plaintiff obtained possession of her daughter's phone and did not turn it over to law enforcement despite Sergeant Jones's informing her of investigator's interest in its contents. Second, plaintiff failed and could not prove that defendant knew of or acted in reckless disregard as to the falsity of the publicized matter. The record reflects that, before publishing his blog post, defendant obtained the incident report and at least confirmed its contents with Sergeant Jones. The facts he posted were not provably false, and he expressed his opinion based on those facts. The trial court determined that defendant had not acted negligently under the circumstances. The trial court correctly discerned that if plaintiff could not prove that defendant acted negligently, plaintiff also could not prove that defendant knowingly or recklessly publicized information that cast plaintiff in a false light. Accordingly, the trial court did not err by granting defendant summary disposition of this claim.

Affirmed. Pursuant to MCR 7.219, the prevailing party is entitled to recover reasonable costs.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford